Good morning, your honors. Jim Riggs for the appellant, Brandilyn Vernoff and Gabriella Vernoff. The commissioner of the Social Security Administration would have the district court and this court believe that the Uniform Parentage Act is restricted and prevents a biological child from receiving benefits under the Social Security Administrative Act. The Ninth Circuit, as this court knows, dealt with this in Gillette Netting and permitted counsel there's a difference between Gillette Netting and it strikes me as an important one. I'd like you to speak to it. In Gillette Netting, the guy really wanted to have a baby. He was dying and he knew he was dying. So he delayed his chemotherapy in order to have some semen preserved so that he could have a baby, even though he was going to die. In this case, as far as the record shows, never wanted to have a baby, didn't preserve any semen. He was dead, dead on a slab. And then they stuck a needle, I suppose, in his testicles and got some sperm with him dead on a slab. No indication that it was his desire to have a baby. Even though he's a biological father, I don't see why that makes him different from, say, some med student who contributed semen in exchange for money to a sperm donor bank. Well, a couple of differences. Yes, those are nicer, cleaner circumstances. And if you can anticipate your death, it is a more helpful thing to preserve it in advance. The issue of consent or not consent, desire for a family was not brought up at any level. So that wasn't explored. I have been told that was his desire, but that was not a fact before the court. No, it's not in the record. That's correct, Your Honor. But with respect to these were parties who were married, and, yes, the sperm was removed after the fact. They weren't married when the sperm was removed. That part in the ceremony when they say, till death do you part, death parted them. I understand that, Your Honor. But with respect to the statutes of California, it does allow for a child to be born after the death of a marriage. And it does permit certainly within 300 days. That's different. That's a soldier home on leave, impregnates his wife, goes back to Iraq and gets killed before the baby is born. That's correct, Your Honor. It is different, but I believe the situation is analogous. I think that the fact of the matter is that even though the soldier were to pass away, the child born after the death is considered a product of that marriage. And I think along those lines, we have a situation here where the parties are married, the sperm is, of course, removed, and then she's born. And I don't think that it's the child's fault that she should not get benefits, but for the fact of the circumstances of her father not anticipating his death. As I recall, it follows in testesy. In my med student example, I cannot imagine that the child born of the sperm from the donor bank could share in his estate after he was a rich doctor. Would that be any different? Well, again, relying on the fact that these parties had been married, I don't think that a sperm donor in California has taken steps to prevent sperm donors from being liable for situations such as that and child support for a sperm donor specifically. But, again, we rely on the fact that the marriage essentially continues after his death. You know, we're talking policy here, but I get the impression it's state law that matters. And the government says that's what distinguishes Gillette Netting from our case. Arizona law is different than California law. That is their position, Your Honor. Can you speak to that? Well, I think that the difference is that California is actually pretty expansive when it looks to the UPA, the Uniform Parentage Act. The California's efforts were to allow a child to be received by a third party to step in and be that father. And if that person can do that, then he probably would trump if he's better than the biological father. In this case, we have no third party stepping in. There is nobody contesting parentage who would be a better parent. And the cases that we go through all list a third party who stepped into a family situation and said, I'll raise this child as my own. Well, would she be a survivor under California intestacy law? It would be our position that she would be a survivor under that. That's not my position. I mean, doesn't the law explain that she's not? Well, it does allow that marriage is not a controlling factor of whether or not someone receives intestacy succession under California law. And she is a product of the decedent. So I believe that she would take under California's probate code. Under the intestacy law, aren't you having two problems? One is that there's no consent from the father. And two, the child was born three years after, more than two years after the father died. How do you get over those problems? I can't overcome the consent issue for certain. But with respect to the probate code does permit that if it's impossible for the father to hold out the child, that there is a provision that allows the child to take intestate succession. I believe that that is permitted under the probate code. Which section? I will get that, Your Honor. Under probate code 6453. D3, it was impossible for the father to hold out the child as his own. And paternity is established by clear and convincing evidence. Here we have paternity that is established by clear and convincing evidence. And no one was able to attack paternity. And he was, of course, impossible to hold out the child as his own. Do you think there's any significance to this provision back in 7613, that a sperm donor is treated in the laws if he were not the natural father? A sperm donor, again, I agree that the Court points out that a sperm donor, using the medical student example, is correct. He would not be treated. We rely on the fact of the marriage. And we don't see this as a negative section with respect to a husband and wife. But they weren't married when he donated the sperm. It's our position that the marriage continued as it would be the case. They continue a marriage after you're dead. Well, she is not remarried. And she is considered the widower under California's probate law. Widow means no more husband. Correct, Your Honor. Am I missing something here? I thought you weren't married after one of the spouses was dead. Well, we put forth that the probate code continues it. We continue it. It's a 300-day period. I mean, am I missing something in the words of a California statute? No. If they provide that you're still married when somebody's dead, that's okay. Just for the 300-day period before the birth of the child, the soldier scenario that the Court brought up. That's the only exception that I'm aware of. If the Court has some more questions, I'll reserve time. Thank you. I looked at 6407, and it says relatives of the decedent conceived before the decedent's death were born thereafter and inherited as if they'd been born in a lifetime. That's probably the core provision on intestacy, isn't it? It would be the core provision, but I don't believe that is the exclusive provision, Your Honor. Thank you, Counsel. Thank you. May it please the Court, my name is Kelsey Brown-Corker, and I am here on behalf of the Social Security Administration. As the District Court found, the Social Security Administration properly denied Ms. Varnoff's application for survivor benefits on behalf of her daughter, Brandilyn. The purpose of survivor benefits is to protect children who are financially dependent on a wage earner who unexpectedly dies. Brandilyn cannot demonstrate that she was financially dependent on Mr. Varnoff at the time of his death because she had not been conceived. I mean, if this had happened in Arizona, would she get the benefits? I believe so, yes. Isn't that kind of a perplexing result, that if this happens in Arizona under federal Social Security law, she would get benefits? If it happens in California, she doesn't? It's a direct result of this Court's decision in Gillette Netting, which stated that legitimacy turns on state law. And there are other portions of the Social Security Act that also turn on state law. And so I don't think there's any room for the Social Security Administration to do otherwise here. Does Gillette Netting and state law allow room to consider the intent of the sperm donor? I think that point that you were making earlier certainly goes to the public policy goals of the statutory scheme that California has enacted here. And actually, every state to grapple with this issue has uniformly limited the legal recognition of child-parent relationships following when there's posthumous conception to those situations in which you have expressed consent from the deceased biological parent. Could you trace this through the California statute to show how we should apply them, in your opinion? Yeah. Under Gillette Netting, we will be looking to the California law to determine whether the child is a child. I mean the numbers. Yes. Just let us. Yeah. So the first place you start is Section 7601, which states that California will recognize a legal child-parent relationship between a child and its natural parents and refers to the legal rights incident to that relationship. Then you move to 7611, which lays out the circumstances in which California recognizes a legal child-parent relationship. Hold on a minute. Sure. You said 7601. You didn't mean 7610? No. 7601, parent and child relationship defined. Okay. And then you move to 7611, which lays out the circumstances under which California recognizes a legal child-parent relationship. And it's important to note that in Zachariah D., the California Supreme Court held that these presumptions are exclusive and that biological parenthood is not sufficient to establish a child-parent relationship under California law. So I guess there we follow subsection F? You would look both at the state of the law before 2005 and the state of the law after 2005. And under neither state of the law would Brandilyn be established as the legal child of Bruce Vernoff. In the pre-2005 circumstances, the law is exactly the same, except that section F was not there at that time. It's simply the case that none of these provisions are applicable. As you pointed out earlier, the marriage ended at death under California law, so A and B cannot be applicable. And it's indisputable that C and D are not applicable, as well as E. So there's just simply not a provision that would establish a child-parent relationship in this case. Then post-2005, you have section F, which is a cross-reference to the probate code, section 249.5. But as Judge Hall pointed out earlier, it's quite clear we don't have express written consent and the child wasn't conceived within two years of Mr. Vernoff's death. So they cannot establish a legal child-parent relationship under section F. I think that's where this Court's inquiry ends with regard to the family code. Alternatively, a child can show a right to inherit under the California code. They would be eligible for benefits. But, again, you can't point to any ---- 249.5 requires consent? Yes. It requires express written consent. It requires that the child be born within or conceived within two years of the death of the biological parent. And that's where this Court's inquiry would end. And just to point out, Mr. Rates cited section 6453 earlier as a possible provision that would apply here. If you look at subsection A of that provision, it expressly cross-references the family code. A natural parent-child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act. And that would preclude any application of this provision here. No further questions? We ask that this Court affirm the district court. Thank you, counsel. Thank you, Andrea. If I may address, counsel, with respect to Zachariah D. case, the California Supreme Court did not hold that biological did not equal natural. That was a case regarding dependency where the biological father did not meet certain time constraints to come within a dependency hearing. The cases do equate biology with natural. The position of the Social Security Administration has been that natural was sufficient to meet the standard for receipt of benefits. We believe that being biological does equal natural, and natural is their request. The cases are clear that biological equals natural. And I believe that 7611 is the presumptive section. She's correct under the family code, but I don't believe it's the exclusive means of doing that. What we have is a situation where paternity is not being contested by anyone, and it is assumed here and it should be presumed. But it is not being contested by a third party. Since under your analysis, you don't have to be married, you don't have to have express written consent to be the father, how would we distinguish cases like my med student hypothetical? Well, I. After he's become a rich doctor and sharing in the estate is worthwhile. I believe California protects the donor. With respect to a man who does make efforts, even if he's not married, they can, of course, receive the child. They can donate sperm and have a child. And that child would be able to inherit, as I understand the law, with respect to Social Security. So the med student is distinguished because under California law he has, and he would need to be distinguished, he needs this, a special statute protecting sperm donors. Yes, I would believe so, Your Honor. And if I can address just briefly the argument of administrative convenience, which was brought up with respect to the Fifth Amendment argument, I don't believe that administrative convenience is a reason to exclude posthumously conceived children. I believe with respect to posthumously conceived children that there will be no difference in administrating the Social Security Act with respect to obtaining a birth certificate, marriage certificate, and a genetic testing, any different than the current Uniform Parentage Act would require. As a matter of fact, California makes it a bit difficult to approve parentage, because obviously, as pointed out by the Social Security Administration, that a child could receive benefits even if it wasn't the biological father. So I don't believe the argument with respect to excluding posthumously conceived children works for administrative convenience. If there are no questions, submit. Thank you. Thank you, counsel. Bernoff v. Astor was submitted. And we'll hear DSPT International v. Nahum.
judges: Hall, Kleinfeld, Silverman